UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, | No.  2:20-cv-00654-TLN-AC |
| Plaintiff, | |
| v. | **ORDER** |
| SUGAR BOWL CORPORATION, a California Corporation, and DOES 1-20, INCLUSIVE, | |
| Defendants. | |

This matter is before the Court on Sugar Bowl Corporation's ("Defendant") Motion for Summary Judgment.  (ECF No. 6.)  Travelers Property Casualty Insurance Company ("Plaintiff") filed an opposition to the motion.  (ECF No. 7.)  Defendant filed a reply.  (ECF No. 8.)  For the reasons set forth below, the Court hereby DENIES Defendant's Motion for Summary Judgment. (ECF No. 6.)

///

///

///

///

///

1

1    **I.    FACTUAL AND PROCEDURAL BACKGROUND**[1]

2         Plaintiff is an insurance business and provided a policy to its insured, Celia Cummings

3    ("Cummings") for her residence located at 880 Fiddleneck Place in Nordon, California.  (ECF

4    No. 1-1 at 2–3.)  Defendant manages a ski resort in Placer County, which includes the Sugar

5    Bowl Village ("Village") comprised of several residences.  (DMF ¶ 1; PSUF ¶ 1.)

6         There are two agreements at issue in the instant case: (1) the Village Services Agreement

7    ("Village Agreement") and (2) the Rental Management Agreement ("Rental Agreement").  (DMF

8    ¶¶ 3–4; PSUF ¶¶ 3–4.)

9         The Village Agreement provides services to property owners in the Village.  (DMF ¶ 3;

10   PSUF ¶ 3.)  Most property owners in the Village choose to participate in the agreement.  (*Id.*)

11   The Village Agreement provides services such as garbage removal, daily security patrol,

12   concierge services, and mail and package delivery.  (ECF No. 6-6 at 7–8.)  This agreement does

13   not contain a waiver of subrogation provision.  (*See id.* at 4–12.)

14        The Rental Agreement provides Rental Property Management services to property owners

15   in the Village.  (DMF ¶ 4; PSUF ¶ 4.)  Many of the property owners participate in this agreement

16   in which Defendant facilitates property rentals and provides related services.  (*See* ECF No. 6-6 at

17   14–22.)  This agreement provides for services such as housekeeping, routine maintenance, and

18   marketing the rental to prospective guests.  (*Id.* at 16–18.)

19        Cummings residence is located within the Village.  (DMF ¶ 2; PSUF ¶ 2.)  Cummings

20   entered into both the Village Agreement with Defendant in 2015 (DMF ¶ 3; PSUF ¶ 3; *see* ECF

21   No. 6-6 at 6) and the Rental Agreement in 2010, which remained in place in 2017.[2]  (DMF ¶ 6;

---

[1]      The following facts are taken from Defendant's Material Facts ("DMF") (ECF No. 6-2)
and Plaintiff's Response to Defendant's Statement of Undisputed Facts ("PSUF") (ECF No. 7-2)
and are deemed undisputed unless otherwise noted.

[2]      Plaintiff disputes whether Defendant provided rental management services on Cumming's
property from 2015 onwards.  (PSUF ¶¶ 4, 6.)  Plaintiff cites to the Declaration of Susan
Kirkgaard ("Kirkgaard") to argue Defendant did not provide rental management services.  (ECF
No. 7-4 ¶¶ 7–8.)  Kirkgaard refers to exhibit two, the lease agreement between Cummings,
Lessor, and Caroline and Jordan Shlain, lessees, to demonstrate that Plaintiff retained her own
renters.  (ECF No. 7-6 at 10–14.)  Kirkgaard states "the Shlains had possession of the Subject
Property from 2015–2017."  (ECF No. 7-4 ¶ 8.)  Indeed, the attached lease states the rental term

2

1    PSUF ¶ 6.)

2        A large amount of snow fell in the Village in the winter of 2017.  (DMF ¶ 7; PSUF ¶ 7.)

3    On January 25, 2017, Defendant emailed Cummings to inquire if she would pay an extra fee to

4    have snow removed from her residence.[3]  (*Id.* at ¶ 8.)  Cummings replied to the January 25th

5    email agreeing to the fee for the snow removal service.  (*Id.*)  Defendant did not remove the snow

6    from the residence until March 25, 2017 — two months after the initial email in January.  (DMF ¶

7    9; PSUF ¶ 9.)  The weight of the snow left against the residence caused property damage and

8    Cummings subsequently filed a claim with Plaintiff.  (DMF ¶¶ 10–11; PSUF ¶¶ 10–11.)

9    Plaintiff's report found the property damage was minimal, but Cummings was displeased with the

10   determination and sued Plaintiff.  (DMF ¶¶ 12–13; PSUF ¶¶ 12–13.)  Defendant alleges the

11   litigation between Plaintiff and Cummings has concluded, but Plaintiff has not provided the

12   settlement agreement to Defendant.  (DMF ¶ 14; PSUF ¶ 14.)

13       In the present subrogation action,[4] Plaintiff seeks to recover from Defendant what it paid

14   to its insured, Cummings.  (DMF ¶ 15; PSUF ¶ 15.)  Plaintiff provided Defendant with a copy of

15   Cummings's insurance policy that was in place in March 2017, which covered both her home in

16   St. Helena and her residence in the Village.  (DMF ¶ 17; PSUF ¶ 17.)  Defendant alleges Plaintiff

17   has not produced a document with the full amount paid to Cummings or the terms of the

18

19   was from December 1, 2015, to April 30, 2017.  (ECF No. 7-6 at 10.)  This presents a genuine
     issue of material fact whether the Rental Agreement applied when the incident occurred because
20   which contract applies affects the outcome of the case.  *See Celotex Corp. v. Catrett*, 477 U.S.
     317, 322–23 (1986) (a fact is considered "material" if its proof or disproof is an essential element
21   of a plaintiff's case).  This issue is considered further below in the analysis section.

22   [3]      Plaintiff disputes the support of this contention, claiming the Village Agreement sets forth
     the relevant terms of the snow removal, not the Rental Services Agreement.  (PSUF ¶ 8.)  This
23   issue will be discussed further below in the Court's analysis.

24   [4]      "Subrogation is defined as the substitution of another person in place of the creditor or
     claimant to whose rights he or she succeeds in relation to the debt or claim."  *State Farm Gen.*
25   *Ins. Co. v. Wells Fargo Bank, N.A.*, 143 Cal. App. 4th 1098, 1105 (2006) (quoting *Fireman's*
     *Fund Ins. Co. v. Maryland Casualty Co.*, 65 Cal. App. 4th 1279, 1291 (1998)).  "In the insurance
26   context, subrogation takes the form of an insurer's right to be put in the position of the insured for
27   a loss that the insurer has both insured and paid."  *Id.* at 1106 (quoting *Fireman's Fund*, 65 Cal.
     App. 4th at 1291–92).

28

                                                     3

1   agreement with her, nor has Plaintiff produced the Settlement Agreement in response to

2   Defendant's discovery request.[5]  (DMF ¶¶ 18–19; PSUF ¶¶ 18–19.)

3          On February 20, 2020, Plaintiff filed a complaint in the Superior Court of California,

4   County of Nevada alleging three causes of action: (1) breach of contract; (2) negligence; and (3)

5   nuisance claims.  (ECF No. 1-1 at 2.)  On March 26, 2020, Defendant removed the case to this

6   Court on the basis of diversity jurisdiction.  (ECF No. 1.)  On January 26, 2021, Defendant filed

7   the instant motion for summary judgment.  (ECF No. 6.)  On February 18, 2021, Plaintiff filed an

8   opposition.[6]  (ECF No. 7.)  On February 24, 2021, Defendant replied.  (ECF No. 8.)

9          **II.      STANDARD OF LAW**

10          Summary judgment is appropriate when the moving party demonstrates no genuine issue

11   of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

12   R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

13   judgment practice, the moving party always bears the initial responsibility of informing the

14   district court of the basis of its motion, and identifying those portions of "the pleadings,

15   depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

16   which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

17   *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

18
19   [5]      Plaintiff disputes at the time of the Rule 26 disclosure in this action, there was not yet a
      final resolution to the Cummings action and therefore no final payment amount or resolution to
20    produce.  (PSUF ¶ 18.)  Further, Plaintiff argues the Settlement Agreement was confidential and
      not for publication to third parties and will instead proffer the information through non-privileged
21    means.  (PSUF ¶ 19.)  The Court will examine this issue below.  *See infra* Part D.

22   [6]      Plaintiff requests the Court take judicial notice of (1) a "copy of the Request for
      Dismissal, with prejudice, filed February 9, 2021 in Placer County Superior Court, Case No.
23    SCV0044481 in *Cummings v. Sugar Bowl, et al.*" and (2) a lease agreement from October, 10,
      2015 between Cummings, lessor, and Caroline and Jordan Shlain as lessees.  (*See* ECF No. 7-5;
24    ECF No. 7-6 at 2.)  Defendant does not oppose.  (*See* ECF No. 8.)  The Court may judicially
      notice a fact that is not subject to reasonable dispute, either because it is generally known within
25    the court's jurisdiction or because it can be accurately and readily determined from sources whose
      accuracy cannot reasonably be questioned.  Fed. R. Evid. 201.  A court may also take judicial
26    notice of its own records, the records of other courts, and publicly recorded documents.  *Id.*  All
      requested documents are publicly recorded or court records.  Since the documents are matters of
27    public record and not subject to reasonable dispute, they are subject to judicial notice.  *See* Fed.
      R. Evid. 201(b).  Accordingly, Plaintiff's request for judicial notice (ECF No. 7-5) is GRANTED.

28
                                                  4

at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.

1   at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

2   obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

3   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

4   1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

5   "must do more than simply show that there is some metaphysical doubt as to the material facts."

6   *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead

7   a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at

8   587.

9       **III.   ANALYSIS**

10       In moving for summary judgment, Defendant argues the following: (1) Cummings

11   mutually waived any right to sue Defendant for losses covered by insurance; (2) Defendant was to

12   be named as an additional insured under Plaintiff's policy; (3) Defendant should be considered an

13   implied or express insured for the purposes of this action; (4) the doctrine of "superior equities"

14   precludes Plaintiff from seeking subrogation; and (5) Plaintiff has improperly withheld the

15   settlement agreement with Cummings.  (ECF No. 6-1 at 6–7.)  The Court will address each of

16   Defendant's arguments in turn.  The Court will combine arguments two and three since the latter

17   is argued as an alternative to argument two.

18           A.     Whether Plaintiff's Insured Waived All Claims Against Defendant

19       Defendant argues the Rental Agreement waives all claims against Defendant and

20   Cummings if those claims were covered by insurance.  (ECF No. 6-1 at 13–14.)

21       In opposition, Plaintiff argues the Rental Agreement does not apply here — Defendant's

22   "responsibilities for snow removal falls squarely and exclusively under the Village Services

23   Agreement." (ECF No. 7 at 5.)  Moreover, Plaintiff contends Defendant has not provided rental

24   management services to Cummings since 2015, when she executed a leasing agreement with her

25   own tenant.  (*Id.* at 5–6.)

26       In reply, Defendant argues both the Rental Agreement *and* the Village Agreement apply.

27   (ECF No. 8 at 5.)  Defendant contends the Rental Agreement provided it with rights applicable to

28   this claim.  (*Id.*)

6

1    "Civil Code section 1642 provides that '[s]everal contracts relating to the same matters,

2    between the same parties, and made as parts of substantially one transaction, are to be taken

3    together." *City of Brentwood v. Dep't of Fin.*, 54 Cal. App. 5th 418, 433 (2020) (alteration in

4    original); Civ. Code § 1642.  Section 1642 is most commonly "applied to writings executed

5    contemporaneously, but it is likewise applicable to agreements executed by the parties at different

6    times if the later document is in fact a part of the same transaction." *City of Brentwood*, 54 Cal.

7    App. 5th at 43 (internal citations omitted).  However, it is important to consider the parties' intent

8    at the time of contracting, for, if the contracts are to be "construed together, the separate

9    instruments must be 'so interrelated as to be considered one contract.'"  *Id.* (quoting *R.W.L.*

10   *Enters. v. Oldcastle, Inc.*, 17 Cal. App. 5th 1019, 1027–1028 (2017)).

11       The Court has reviewed the Village Agreement and the Rental Agreement (ECF No. 6-6

12   at 4–33) to determine if the contracts are to be "construed together."  *City of Brentwood*, 54 Cal.

13   App. 5th at 434.  On its face, the reach of the Rental Agreement is narrow and solely operates to

14   "appoint[] [Defendant] as the exclusive, short-term occupancy rental manager for the Unit."

15   (ECF No. 6-6 at 14.)  The Rental Agreement only mentions that the owner of the rental property

16   "shall contract for [Defendant's] Village Services."  (*Id.*)  By contrast, the Village Agreement

17   contains provisions regarding snow removal, and makes no mention of the Rental Agreement.

18   (ECF No. 6-6 at 8–9.)  "The position 'that essentially any topic a contract mentions is

19   incorporated therein is unsupported by any authority and would lead to absurd results.'"  *R.W.L.*

20   *Enters.*, 17 Cal. App. 5th at 1029 (quoting *Versaci v. Super. Ct.*, 127 Cal. App. 4th 805, 817

21   (2005)).  As "the separate instruments must be 'so interrelated as to be considered one contract,'"

22   the sole mention of the Village Agreement within the Rental Agreement is not sufficient to

23   support a finding that the contracts were meant to be construed together.  *R.W.L. Enters.*, 17 Cal.

24   App. 5th at 1028 (quoting *Holguin v. DISH Network LLC*, 229 Cal. App. 4th 1310, 1321 (2014)).

25       Further, the Court considers the Village Agreement's "Sole Agreement/Release"

26   provision which states: "This Agreement supersedes all previous arrangements between

27   [Defendant] and Villager for the provision of Village Services or similar services . . ."  (ECF No.

28   6-6 at 6.)  Courts often interpret such integration clauses as the final agreement between parties

7

1  that supersedes all others.  *See Gray v. Am. Mgmt. Servs.*, 204 Cal. App. 4th 803, 808 (2012) (a

2  contract provision claiming to supersede prior agreements between parties dictated the court read

3  it as such).  "The purpose of an integration clause is to preclude the introduction of evidence

4  which varies or contradicts the terms of the written instruments . . . it does not function to meld

5  the documents it mentions."  *Amtower v. Photon Dynamics, Inc.*, 158 Cal. App. 4th 1582, 1609

6  (2008).

7         The Court finds that the plain language of the agreements and the inclusion of the

8  integration clause suggest the agreements were intended by the parties to be separate.  *See Shaw*

9  *v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 53 (1997) (when parties dispute two agreements

10  at issue, the "overriding goal of interpretation is to give effect to the parties' mutual intentions as

11  of the time of contracting") (citations omitted).  Because Plaintiff has provided evidence that that

12  Village Services Agreement could apply, the Court finds there is a genuine issue of material fact

13  as to which contract applies to the dispute and thus DENIES summary judgment on this basis.

14              B.    Whether Defendant should be Treated as an Insured Under the Policy

15         Defendant argues it was supposed to be named as an additional insured under

16  Cummings's insurance policy.  (ECF No. 6-1 at 16–17.)  As such, Defendant contends Plaintiff

17  should be estopped from treating Defendant as anything but an insured.  (*Id.* at 17.)

18  Alternatively, Defendant argues it should be considered an express or implied insured because its

19  position as a "real estate manager" is considered an "insured" under Plaintiff's policy.  (*Id.* at 17–

20  18.)  Defendant argues its treatment as an insured extends to both the liability coverage and the

21  property damage coverage.  (*Id.* at 18.)

22         In opposition, Plaintiff contends Defendant's arguments pertain to a provision in the

23  Rental Agreement, which is not at issue in this case.  (ECF No. 7 at 9.)  Plaintiff argues there is

24  no contractual obligation to include Defendant as an additional named insured on the property

25  policy — it exists only for the liability policy.  (*Id.* at 9–10.)  Plaintiff argues Defendant is not an

26  implied or express insured because it "took on the role of snow removal contractor" which is "not

27  an insured under any theory postulated by [Defendant], and there is no bar to subrogation."  (*Id.*)

28  In reply, Defendant argues "long before March 2017, the insured and [Defendant] agreed that

1    they would waive all claims against each other that were covered by insurance . . . " (ECF No. 8

2    at 6.)

3          The parties dispute which agreement governs the present action, as it will dictate

4    Defendant's liability.  As the Court discussed above, there is a genuine issue of material fact as to

5    which contract applies.  *See supra* Part A.  Accordingly, the Court DENIES summary judgment

6    on this basis.

7                    C.    Whether the Doctrine of Superior Equities Applies

8          Defendant argues the doctrine of superior equities precludes Plaintiff's claim because

9    Defendant did not cause the loss, it merely failed to prevent the loss caused by nature.  (ECF No.

10   6-1 at 22.)  Defendant contends Plaintiff does not have "the superior equities needed to pursue an

11   equitable subrogation claim."  (*Id.*)

12         In opposition, Plaintiff argues California law dictates nature cannot be accorded fault for

13   loss, as Defendant attempts to do.  (ECF No. 7 at 10.)  Plaintiff claims it holds the superior

14   equitable position because Defendant failed to remove the snow in accordance with the Village

15   Agreement.  (*Id.* at 10–11.)  Further, Plaintiff contends Defendant should be liable for failing to

16   remove the snow around Cummings's residence in a timely manner.  (*Id.* at 12.)  In reply,

17   Defendant argues it "didn't cause the extraordinary amount of snow, it just failed to remove it in

18   time to avoid the alleged damage to the home.  There was no duty to remove the snow apart from

19   the Village [Agreement]."  (ECF No. 8 at 6.)

20         "Under the doctrine of superior equities, although an insurer might have a subrogation

21   interest in the insured's claim against the party that caused the loss, it cannot enforce its

22   subrogation rights unless it has equities superior to those of the wrongdoer."  *N.Y. Marine & Gen.*

23   *Ins. Co. v. Wherry*, 506 F. Supp. 3d 1003, 1006 (C.D. Cal. 2020) (quoting *W. Heritage Ins. Co. v.*

24   *Frances Todd, Inc.*, 33 Cal. App. 5th 976, 991 (2019)) (quotation marks and citation omitted).

25   The loss may be shifted from the insurer to the defendant if the defendant's equitable position is

26   inferior to that of the insurer.  *Capitol Specialty Ins. Co. v. GEICO Gen. Ins. Co.*, CV 20-00672-

27   RSWL-E, 2021 WL 5192832, at *4 (C.D. Cal. Nov. 5, 2021).

28         Defendant relies upon *Fireman's Fund* to argue that it has the superior equities.  (ECF No.

9

6-1 at 21–22 (citing *Fireman's Fund Ins. Co. v. Morse Signal Devices*, 151 Cal. App. 3d 681 (1984)).  In *Fireman's Fund*, the court considered a subrogation action by an insurance company against alarm companies which failed to prevent eleven incidents of fire or burglary.  *Fireman's Fund Ins. Co.*, 151 Cal. App. 3d at 686.  The court held subrogation was improper, finding: "the primary cause of the loss is the creator of the fire or the burglar. . . .  The insurance company, which charges its premiums based on the extent of insurance coverage, is in the best position to spread the risks assumed."  *Id.* at 688.  The Court finds this unpersuasive when, as here, Defendant arguably acted negligently in failing to remove the snow when it promised it would, leading to the property damage.  (*See* ECF No. 6-6 at 36–43 (email exchange between Cummings and Defendant showing Defendant said it would remove the snow in January after Cummings consented to the fee.))

The Court is persuaded by a more analogous case, *State Farm Gen. Ins. Co. v. Wells Fargo Bank, N.A*, 143 Cal. App. 4th 1098 (2006).  In *State Farm*, the court considered a subrogation action in which the insurance company sought to recover from a condominium association for a fire that started in their apartment building which then spread to the insureds' neighboring apartment complex.  *State Farm Gen. Ins. Co.*, 143 Cal. App. 4th at 1103.  The insurance company argued the condominium association should be liable for their negligent efforts in fire prevention, as the condominium did not provide a safe disposal for fireplace ashes.  *Id.*  The court found "while arguably an insurer should in fairness bear the loss where the third party's liability is solely contractual, such a result seems unfair when the loss has been caused by the third party's tortious conduct."  *Id.* at 1118 (citations omitted).  Thus, the court permitted the insurance company to pursue subrogation even though the respondents did not start the fire.  *Id.* at 1118–19.

As in *State Farm*, Defendant here did not cause the property damage.  *State Farm*, 143 Cal. App. 4th at 1118.  However, "[t]he mere fact that respondents did not [cause the snowfall] does not automatically mean that they have a superior equitable position over [Plaintiff]."  *Id.*  As discussed above, there is a genuine dispute as to whether Defendant acted negligently in failing to prevent the damage by not promptly removing the snow buildup on the property as repeatedly

1    requested.  This presents a question for the jury of whether Defendant "w[as] in a better position

2    to avoid the loss than [Plaintiff] or its insureds."  *State Farm*, 143 Cal. App. 4th at 1118.

3    Accordingly, a genuine dispute of material fact precludes the Court from granting summary

4    judgment.  Defendant's motion for summary judgment on this basis is DENIED.

5              D.      <u>Whether Plaintiff Improperly Withheld Documents</u>

6          Defendant contends an insurance company, like Plaintiff, is precluded from recovery in a

7    subrogation action until the insured is fully compensated.  (ECF No. 6-1 at 23.)  Defendant points

8    to the underlying case between Cummings and Plaintiff, in which Plaintiff agreed to pay

9    Cummings for the property damage to her residence.  (*Id.*)  Defendant argues Plaintiff is

10   precluded from recovery in the present case because it has not produced the settlement agreement

11   from the underlying case with Cummings.  (*Id.*)

12         In opposition, Plaintiff argues it filed the present subrogation action prior to concluding

13   the settlement with Cummings.  (ECF No. 7 at 14.)  Thus, Plaintiff contends it had not finalized

14   the settlement agreement prior to the Rule 26 disclosure and could not submit the agreement to

15   discovery.  (*Id.*)

16         In reply, Defendant argues Plaintiff continues to wrongly withhold "the basic documents

17   supporting its claim."  (ECF No. 8 at 9.)  Defendant contends this is improper because a party that

18   fails to make the Rule 26 disclosures is not allowed to then use the undisclosed information to

19   supply evidence on a motion.  (*Id.*)

20         On November 4, 2021, Defendant filed a motion to compel.  (ECF No. 13.)  Defendant

21   sought "to secure a copy of the Settlement Agreement from the Underlying Action."  (ECF No.

22   13-1 at 6.)  The assigned magistrate judge granted Defendant's motion to compel the settlement

23   agreement.  (ECF No. 19.)  The court held that, because a settlement agreement between the

24   insured and insurer may impact the insurer's subrogation rights, Defendant was entitled to view

25   the documents.  (*Id.* at 6.)  Neither party has requested to supplement the instant motion with

26   anything related to this argument since the magistrate judge's order.  Because a ruling on this

27   matter has been issued (*see* ECF No. 19), the Court will not address the prior dispute in this

28   motion.

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby DENIES Defendant's Motion for Summary Judgment.  (ECF No. 6.)  The parties are hereby ORDERED to file a Joint Status Report within thirty (30) days of the electronic filing date of this Order indicating their readiness to proceed to trial and proposing trial dates.

IT IS SO ORDERED.

**DATED:**  June 14, 2022

Troy L. Nunley
United States District Judge

12